**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ANTHONY SANDERS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **CIVIL ACTION NO. 07-0300-WS** |
| **v.** | ) | |
| | ) | **CRIMINAL ACTION NO. 04-0256-WS** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**ORDER**

This matter is before the Court on the petitioner's motion to vacate, filed pursuant to 28 U.S.C. § 2255. (Doc. 59). The respondent has filed a response, (Doc. 63), the petitioner declined the opportunity to reply, (Doc. 65), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion to vacate is due to be denied.


**BACKGROUND**

The petitioner was the sole defendant in a three-count indictment. Count One charged him with conspiracy to possess with intent to distribute more than 5 kilograms of cocaine and more than 50 grams of crack cocaine. Counts Two charged him with a substantive offense of possession with intent to distribute cocaine, and Count Three charged a substantive offense of possession with intent to distribute crack cocaine. (Doc. 12).

Robert Ratliff was appointed counsel in December 2004. (Doc. 10). In January 2005, the petitioner filed a pro se motion to appoint new counsel. (Doc. 21). Following a hearing, the Magistrate Judge granted the motion and appointed Andrew Jones as counsel. (Doc. 24). The petitioner proceeded to trial in March 2005 and was convicted on all counts. (Doc. 29). The Court sentenced the petitioner to a term of imprisonment of 324

months, (Doc. 38), and the Eleventh Circuit affirmed.  (Doc. 58).

The prosecution involved the petitioner's connection with drug activity conducted by witness Felton Denham at his trailer home in Baldwin County.  Denham testified that the petitioner served as a lookout man in exchange for crack cocaine, patrolling around his house and informing if law enforcement was nearby.  Denham testified that the petitioner also brokered drug deals, bringing Denham money from purchasers and delivering the drugs to the purchasers.  Denham also described an incident in which the petitioner stole drugs from him, which formed the basis of the substantive counts.

Ten other witnesses testified as to the petitioner's drug activity, confirming his status as a lookout, his brokering of drug deals, and his possession and distribution of the drugs stolen from Denham.  Denham and most of the other witnesses had entered plea agreements with the government.  Denham and several other witnesses had criminal convictions for various offenses.

Officer Loftis of the Fairhope Police Department and DEA Task Force testified that he interviewed the petitioner pursuant to a valid *Miranda* waiver.  The petitioner admitted brokering cocaine deals between Denham and other persons.  He also admitted stealing powder and crack cocaine from Denham.  Some time later, an arrest warrant was issued for the petitioner.  Two law enforcement officers testified that, when they attempted to arrest the petitioner on separate occasions, the petitioner bolted and ran into the woods.  After his arrest, the petitioner gave another valid *Miranda* waiver and told Loftis he had received crack from Denham's girlfriend in exchange for brokering drug deals and acting as a lookout, using a two-way radio to alert Denham to police and customers.

## CLAIMS PRESENTED

The petitioner asserts the following claims of ineffective assistance:

- That Ratliff failed to communicate a plea offer;

- That Ratliff failed to explain the "sentencing variations that could have been made had the petitioner taken a plea";

- That Ratliff failed to "obtain any discoverable leniency agreements" with the prosecution's witnesses;

- That Jones failed to communicate a plea offer;

- That Jones failed to explain the sentence the petitioner could face by going to trial or by pleading guilty;

- That Jones failed to explain the "overwhelming evidence" against the petitioner;

- That Jones failed to investigate or interview the prosecution's witnesses;

- That Jones failed to advise the petitioner that he had obtained "leniency agreements" concerning the prosecution's witnesses;

- That Jones failed to argue in closing that the prosecution's witnesses had lied by denying any promises of leniency in exchange for their testimony; and

- That Jones failed to object to the prosecutor's reliance in closing on the false testimony of the prosecution's witnesses that they had received no promises of leniency in exchange for their testimony.

(Doc. 59 at 4-5, 14-15).

The petitioner also claims that the government interfered with his right to counsel by knowingly failing to correct the perjured testimony of its witnesses and relying on that perjured testimony in closing.  (Doc. 59 at 5).

## DISCUSSION

To establish ineffective assistance of counsel, "a petitioner must show that counsel's performance was deficient and that he was prejudiced by that deficiency.  A petitioner must overcome a strong presumption of competence, and the court must give

significant deference to the attorney's decisions."  *Hagins v. United States*, 267 F.3d 1202, 1204-05 (11th Cir. 2001) (internal citations omitted); *accord Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001); *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990).  Deficient performance requires a showing that counsel's performance is "objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases."  *Id*.[1]  Prejudice requires a showing of a "reasonable probability that the result of the proceedings would have been different had counsel not performed deficiently."  *Id*.[2]

"Conclusory allegations of ineffective assistance are insufficient."  *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (internal quotes omitted).  Furthermore, "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance" of counsel.  *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994).  Rather, an attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

---

[1] A petitioner "must prove deficient performance by a preponderance of competent evidence, and the standard is reasonableness under prevailing professional norms."  *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1303 (11th Cir. 2000).  "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that *no* reasonable lawyer, in the circumstances, would have done so. ...  Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (emphasis added) (internal quotations and citations omitted).

[2] A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome."  *Gallo-Chamorro*, 233 F.3d at 1303-04.  A petitioner must show that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Cross*, 893 F.2d at 1292 (citation omitted).

-4-

**I.  Ineffective Assistance - Ratliff.**

    **A.  Failure to Communicate Plea Offer.**

      The petitioner claims that Ratliff never communicated a plea offer from the government, but the evidence conclusively shows otherwise.  On January 27, 2005, Ratliff wrote the prosecutor and advised her that the petitioner rejected a plea agreement she had offered.  (Doc. 63, Exhibit 5).  The letter relates that the petitioner was aware that he faced a potential penalty of life imprisonment but that the plea left him with a ten-year mandatory minimum and he was "unwilling to accept any plea offer that would result in a sentence of more than five years."  (*Id*.).  The letter reflects that a courtesy copy was directed to the petitioner.  (*Id*.).

      The hearing on the petitioner's pro se motion to appoint new counsel occurred one week later.  At the hearing, he acknowledged that he had received Ratliff's letter.  He did not deny that Ratliff had communicated the government's plea offer, and he was obviously aware of it once he received the letter.  The petitioner complained only that the letter made it appear as if he would not accept any plea, whereas he told the Magistrate Judge,  "I just want the lowest plea I can get."  (Doc 63, Exhibit 3 at 1).[3]

      Because the record conclusively establishes that Ratliff communicated the government's plea offer to the petitioner, he cannot establish that Ratliff performed deficiently by not communicating the offer, and his claim of ineffective assistance must fail.

---

[3]By affidavit, Ratliff has testified that he met with the petitioner twice about the government's plea offer.  (Doc. 63, Exhibit 1).  His affidavit is consistent with the representations he made to the Magistrate Judge on the petitioner's motion to appoint new counsel.  (Doc. 63, Exhibit 3 at 3).  Nevertheless, because the petitioner denies that these meetings occurred, the Court relies instead on his admitted receipt of the letter, which accomplished the same purpose.

**B.  Failure to Explain Sentencing Implications of a Plea.**

As noted, the petitioner acknowledged receiving Ratliff's letter of January 27, 2005.  Therein, Ratliff identified the petitioner's exposure to a maximum penalty of life imprisonment and the possibility of receiving the ten-year mandatory minimum pursuant to a plea.  (Doc. 63, Exhibit 5).  Moreover, the petitioner alleges only that Ratliff did not "sit" with the petitioner and "the guideline books," (Doc. 59 at 14), without denying that he received sentencing information through other means.  The affidavits of Ratliff and Jones establish that Ratliff sent the petitioner a detailed letter explaining the guidelines and how a guilty plea would impact them.  (Doc. 63, Exhibit 1; *id*., Exhibit 4 at 2).  Because the record conclusively establishes that Ratliff explained to the petitioner the sentencing implications of a plea, he cannot establish that Ratliff performed deficiently by not doing so, and his claim of ineffective assistance must fail.

**C.  Failure to Obtain Discoverable Leniency Agreements.**

The threshold defect in the petitioner's claim is its failure to allege that any "leniency agreements" existed at the time Ratliff represented him.  Even if there were such agreements, and even if Ratliff was ignorant of them, the fault lay not with him but with the prosecution.  Pursuant to Local Rule 16.13(b)(1)(C), the government was required to unilaterally disclose "[t]he existence and substance of any payments, promises of immunity, leniency, preferential treatment, or other inducements made to prospective witnesses, within the scope of *United States v. Giglio*, 405 U.S. 150 (1972)."  Moreover, "[i]t is the Court's policy to rely on the standard discovery procedure as set forth in this Rule as the sole means of the exchange of discovery in criminal actions except in extraordinary circumstances."  Local Rule 16.13(a).   In short, it was up to the government, not Ratliff, to ensure that any leniency agreements were provided him.  Accordingly, the petitioner cannot establish that Ratliff performed deficiently in not obtaining any leniency agreements, and his claim of ineffective assistance must fail.

-6-

## II. Ineffective Assistance - Jones.

### A. Failure to Communicate Plea Offer.

After he replaced Ratliff as counsel, the government forwarded to Jones "a copy of the proposed plea agreement and factual resume." (Doc. 63, Exhibit 6 at 2). The petitioner alleges that Jones did not inform him of this plea offer. (Doc. 59 at 14). Jones responds that he did so. (Doc. 63, Exhibit 4 at 2). For present purposes, the Court accepts the petitioner's version.

A criminal defendant has a right to be informed of a plea offer, and counsel's "failure to inform [his] client of [such an] offer constitutes ineffective assistance." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (internal quotes omitted). However, a petitioner alleging ineffective assistance with respect to rejection of a guilty plea must show that he was prejudiced by his counsel's deficient performance. "Where a defendant challenges a not-guilty plea based on ineffective assistance of counsel, he must show that there is a reasonable probability that, but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial." *Paez-Ortiz v. United States*, 200 Fed. Appx. 946, 948 (11th Cir. 2006) (internal quotes omitted). In making this showing, "[w]e have held that after the fact testimony concerning [a] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice ... he would have accepted the plea offer." *Cook v. United States*, 189 Fed. Appx. 927, 929 (11th Cir. 2006).

The petitioner cannot show a reasonable probability that he would have accepted the government's proposed plea agreement. First, he fails to allege that he would have accepted the proposal had he been made aware of it. (Doc. 59 at 4, 14-15).[4] Second, any such post hoc allegation, standing alone, would be legally insufficient to show prejudice,

---

[4]Although he alleges that he "would have decided to take a plea" had Ratliff informed him of the government's earlier proposal, (*id*. at 14), he makes no similar allegation concerning Jones.

and the petitioner offers nothing else.[5]  Because the petitioner cannot establish that he was prejudiced by Jones' alleged failure to advise him of the government's plea offer, his claim of ineffective assistance must fail.

### B.  Failure to Explain Sentencing Implications.

The petitioner alleges that Jones "did not explain to me what I would be facing in the event I stood trial, or in the event, I made a decision to take a plea offer."  (Doc. 53 at 14-15).  Jones testifies that he did so.  (Doc. 63, Exhibit 4 at 2).  The Court again accepts the petitioner's version for present purposes.  Even so, as discussed in Part I.B, the record establishes that the petitioner was so advised.  Assuming without deciding that Jones' alleged failure to consult with the petitioner concerning sentencing implications would constitute deficient performance, the petitioner could not have been prejudiced by the failure, because he had received this information from Ratliff.  Because the petitioner cannot establish prejudice, his claim of ineffective assistance must fail.

### C.  Failure to Explain the Evidence Against the Petitioner.

Shortly after he was appointed, the prosecutor sent Jones 16 reports on interviews with 12 witnesses (including two of the petitioner), along with other evidence.  (Doc. 63, Exhibit 6 at 1).  Jones states that he reviewed this evidence with the petitioner, (*id.*, Exhibit 4 at 1-2), but the petitioner alleges that Jones "never discussed the overwhelming

---

[5]Indeed, the evidence simply confirms that the petitioner would not have accepted the offer.  As discussed in Part I.A, the petitioner was aware of the government's initial offer, at least from Ratliff's letter rejecting it.  He was therefore aware that it embraced the ten-year statutory minimum.  Before the Magistrate Judge, the petitioner did not suggest that he wanted to accept the government's offer, but complained only (and incorrectly) that Ratliff's letter closed the door to future negotiations for a more favorable deal.  The proposal forwarded to Jones was not a more favorable deal than the one sent to Ratliff; it had been modified only to incorporate into the factual resume new information from the investigation.  (Doc. 63, Exhibit 6 at 2).

evidence and strengths of the government's case."  (Doc. 59 at 15).

Assuming without deciding that Jones' alleged failure to review the government's evidence with the petitioner would constitute deficient performance, he has not alleged that he would have pleaded guilty had Jones done so, much less provided additional evidence to bolster the allegation.  Absent such an allegation and additional evidence, as a matter of law he cannot establish that he was prejudiced by Jones' alleged failure, and his claim of ineffective assistance must fail.


### D.  Failure to Investigate or Interview Prosecution Witnesses.

As noted in Part II.C, the record conclusively establishes that Jones was in possession of the government's reports on its interviews with its witnesses.  The petitioner complains that Jones did not investigate or interview these witnesses, but he suggests neither why Jones should not have relied on the reports nor what Jones would have learned had he further investigated the witnesses.

"[N]o absolute duty exists to investigate particular facts or a certain line of defense."  *Chandler v. United States*, 218 F.3d 1305, 1317 (11th Cir. 2000) (en banc).  Instead, "counsel's conducting or not conducting an investigation need only be reasonable to fall within the wide range of competent assistance."  *Id*.  Given that Jones already knew from the reports what the government's witnesses would say at trial, his failure to investigate or interview them is facially reasonable.  Moreover, "the reasonableness of counsel's acts (including what investigations are reasonable) depends critically upon information supplied by the [petitioner]," *id*. at 1318, and the petitioner has identified nothing he told Jones that could have transformed his facially reasonable decision not to investigate or interview these witnesses into an unreasonable one.  Jones therefore did not perform deficiently by not investigating or interviewing the prosecution's witnesses.

Nor was the petitioner prejudiced by Jones' failure, since there is no reasonable probability that, had Jones investigated and interviewed the witnesses, the petitioner

would not have been convicted.  As the petitioner admits, (Doc. 53 at 15), the evidence against him was "overwhelming," and he has done nothing to suggest that investigation and interview of the witnesses could even possibly have blunted the crushing force of their testimony, much less gained an acquittal.

Because the petitioner can establish neither deficient performance nor prejudice, his claim of ineffective assistance must fail.

### E.  Failure to Advise About Witnesses' Leniency Agreements.

The petitioner alleges that Jones was in possession of leniency agreements with the prosecution's witnesses but failed to tell him about them.  (Doc. 59 at 15).  There is in fact no evidence that Jones was in possession of such agreements.  Nor does the petitioner allege that he would have pleaded guilty had Jones told him he possessed them, and he offers nothing that would substantiate such an allegation.  Accordingly, the petitioner can show neither deficient performance nor prejudice, and his claim of ineffective assistance must fail.

### F.  Failure to Argue in Closing That Prosecution Witnesses Were Lying.

Jones argued at length that the witnesses' agreements with the government provided them an incentive to lie about the petitioner's involvement:

> And that's what the Government is doing here today is they are asking you to believe people like Felton Denham, who have everything at stake in this case.  All 10 witnesses, and I believe it was — it may have been 11 — of the persons that came before you and testified either — all of them except one or two admitted that they had a plea agreement with the Government. ...
>
> ...
>
> Now, ladies and gentlemen, I ask you if these witnesses — what are these people trying to gain?  All of them are trying to get — they're trying to get freedom is what they're trying to do; that is, they're trying to knock up to half of what they otherwise would face in prison.  That's a powerful incentive. ... I submit to you, ladies and gentlemen, that's a powerful incentive to say whatever ....

What's more valuable to these people?  If these witnesses had come
to you and come — taken that witness stand and they had said, I've been
paid $500,000 for my testimony by the Government, I've been paid $500,000
to come before you and tell the truth, now what would we do with that?  We
would throw that testimony out the window along with the person testifying.
   But the Government has offered them something far more valuable
than $500,000 or a million dollars or 500 million dollars.  They've offered
them freedom, because without freedom, what good is $500,000?
   ...
   ... I think when you sit down and you consider the testimony of liars,
thieves, drug addicts, violent criminals, people who have every incentive
to say whatever to benefit themselves that you will discard that testimony.

(Doc. 54 at 24-26, 28).

The petitioner appears to argue that Jones should have argued specifically that the
witnesses were lying when they denied having received  promises of leniency.  (Doc. 59
at 15).  The Court has thoroughly reviewed the transcript and finds that only John Arnold
and Joel James made such denials, (Doc. 53 at 191, 216), so the petitioner's argument is
limited to those two witnesses.  The petitioner has identified no evidence that these
denials were false, and counsel cannot perform deficiently by failing to make a bogus
argument.  Nor is there a reasonable probability that, had Jones argued to the jury that
Arnold and James lied when they denied receiving promises of leniency, the petitioner
would not have been convicted, given the "overwhelming" evidence against him.
Because the petitioner cannot establish either deficient performance or prejudice, his
claim of ineffective assistance must fail.

### G.  Failure to Object to the Government's Closing.

The petitioner complains that Jones failed to object when the prosecutor used the
witnesses' "prevarications" that they were "not obtaining any leniency in their sentences
for their testimon[y]."  (Doc. 59 at 15).  As a threshold matter, the Court has reviewed the
government's closing, and at no point did the prosecutor invoke or allude to the denials of
Arnold and James that they received promises of leniency.  At any rate, as discussed in

-11-

Part II.F there is no evidence that their denials were false, so the government would have been free to rely on them in closing had it done so.  Finally, there is no reasonable probability that, had Arnold and James lied and the government relied on those lies, the petitioner would not have been convicted if Jones had only objected.  Because the petitioner cannot establish either deficient performance or prejudice, his claim of ineffective assistance must fail.

## III.  Interference with Right to Counsel.

This claim is based on the allegedly perjured testimony of Arnold and James that they had received no promises of leniency.  (Doc. 59 at 5, 15).  The claim therefore fails for the reasons set forth in Parts II.F and II.G.

## IV.  Evidentiary Hearing.

"Unless the motion [under Section 2255] and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255.  However, an evidentiary hearing is not required in every case.  For example, no evidentiary hearing is required:

- Where the petitioner's claim is "patently frivolous," *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989);
- Where the claim is "based upon unsupported generalizations," *id.*;
- Where the petitioner has not "allege[d] facts that, if true, would entitle him to relief," *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002);
- Where the facts alleged are not "reasonably specific [and] non-conclusory," *id.* at 714-15;
- "[W]here the petitioner's allegations are affirmatively contradicted by the

record," *id.* at 715;

- Where the petitioner's version of the facts has already been accepted as true, *Turner v. Crosby*, 339 F.3d 1247, 1274-75 (11th Cir. 2003); and

- Where "the district court can determine the merits of the ineffectiveness claim based on the existing record." *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983).

As is evident from the Court's discussion above, each of the petitioner's claims is subject to one or more of these exceptions.  Accordingly, the petitioner is not entitled to an evidentiary hearing.

## CONCLUSION

For the reasons set forth above, the petitioner's motion to vacate is **denied**.

DONE and ORDERED this 24th day of October, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE